# COLLATERAL ASSIGNMENT

THIS **COLLATERAL ASSIGNMENT** (the "Assignment") is made and entered into the 26th day of September, 2006, by Cattleman's Meat Company, a Michigan corporation ("Assignor"), in favor of PNC Bank, National Association, as Agent ("Assignee").

## WITNESSETH:

WHEREAS, pursuant to that certain Revolving Credit, Term Loan and Security Agreement (as it may hereafter from time to time be restated, amended, modified or supplemented, the "Credit Agreement") of even date herewith by and among Cattleman's, Inc., Cattleman's Meat Company and Cattleman' Premium Products, LLC, as borrowers (the "Borrowers"), the Lenders now or hereafter party thereto ("Lenders") and Assignee, Assignee and Lenders have agreed to provide certain loans to Borrowers; and

WHEREAS, in order to provide additional security for the repayment of such loans, the parties hereto desire that Assignee for the benefit of Lenders be granted an assignment and security interest in all rights (but not the obligations) of Assignor under those certain contracts listed on Schedule I (each an "Assigned Contract" and collectively the "Assigned Contracts").

NOW, THEREFORE, in consideration of the promises and covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are acknowledged by Assignor, and intending to be legally bound, Assignor assigns to Assignee for the benefit of Lenders all of its right, title and interest in and to each Assigned Contract to the fullest extent permitted by law.

1.     Except as otherwise expressly provided herein, capitalized terms used in this Assignment shall have the respective meanings given to them in the Credit Agreement.

2.     As security for the Obligations, Assignor has granted, bargained, sold, assigned, transferred and set over and by these presents does hereby grant, bargain, sell, assign, transfer and set over unto Assignee on behalf of Lenders, its and their respective successors and assigns, all the rights, interests and privileges which Assignor has or may have in or under each Assigned Contract, including the present and continuing right with full power and authority, in its own name, or in the name of Assignor, or otherwise, but subject to the provisions and limitations of Section 3, (i) to make claim for, enforce, perform, collect and receive any and all rights under each Assigned Contract, (ii) to do any and all things which Assignor is or may become entitled to do under each Assigned Contract, and (iii) to make all waivers and agreements, give all notices, consents and releases and other instruments and to do any and all other things whatsoever which Assignor is or may become entitled to do under each Assigned Contract.

3.     The acceptance of this Assignment and the payment or performance under the Assigned Contracts shall not constitute a waiver of any rights of Assignee or Lenders under the terms of the Notes, the Credit Agreement or any of the Other Documents, it being understood



PLAINTIFF'S
EXHIBIT

that, until the occurrence of a Default or an Event of Default, and the exercise of Assignee's, on behalf of Lenders, rights under Section 4, Assignor shall have all rights to the Assigned Contracts and to retain, use and enjoy the same.

4.    Assignor, upon the occurrence of a Default or an Event of Default, hereby authorizes Assignee, at Assignee's option, to do all acts required or permitted under any Assigned Contract as Assignee, acting as Agent to Lenders, in its sole discretion may deem proper. Assignor does hereby irrevocably constitute and appoint Assignee, while this Assignment remains in force and effect and, in each instance, to the full extent permitted by applicable law, its true and lawful attorney in fact, coupled with an interest and with full power of substitution and revocation, for Assignor and in its name, place and stead, to demand and enforce compliance with all the terms and conditions of each Assigned Contract and all benefits accrued thereunder, whether at law, in equity or otherwise; provided, however, that Assignee shall not exercise any such power unless and until a Default or an Event of Default shall have occurred.

5.    Assignee on behalf of Lenders shall not be obligated to perform or discharge any obligation or duty to be performed or discharged by Assignor under any Assigned Contract, and Assignor hereby agrees to indemnify Assignee and Lenders for, and to save Assignee and Lenders harmless from, any and all liability arising under the Assigned Contracts.

6.    Assignor agrees that this Assignment and the designation and directions herein set forth are irrevocable.

7.    Neither this Assignment nor any action or inaction on the part of Assignee shall constitute an assumption on the part of Assignee of any obligations or duties under any Assigned Contract.

8.    Assignor covenants and warrants that:

    (a)    it has the power and authority to assign each Assigned Contract and there have been no prior assignments of any Assigned Contract which are currently in effect;

    (b)    each Assigned Contract is and shall be a valid contract, and that there are and shall be, no defaults on the part of any of the parties thereto;

    (c)    it will not assign, pledge or otherwise encumber any Assigned Contract without the prior written consent of Assignee;

    (d)    it will not cancel, terminate or accept any surrender of any Assigned Contract, or amend or modify the same directly or indirectly in any material respect whatsoever, without having obtained the prior written consent of Assignee thereto;

    (e)    it will not waive or give any consent with respect to any default or variation in the performance under any Assigned Contract, it will at all times take proper steps to enforce all of the provisions and conditions thereof and it will forthwith notify Assignee of any default under any Assigned Contract;

-2-

(f)　　it will perform and observe, or cause to be performed and observed, all of the terms, covenants and conditions on its part to be performed and observed with respect to each Assigned Contract; and

(g)　　it will execute from time to time any and all additional assignments or instruments of further assurance to Assignee, as Assignee may at any time reasonably request.

9.　　At such time as the Obligations are indefeasibly paid in full and the Credit Agreement has terminated, this Assignment and all of Assignee's and Lenders' right, title and interest hereunder with respect to the Assigned Contracts shall terminate.

10.　　This Assignment shall inure to the benefit of Assignee, its respective successors and assigns, and shall be binding upon Assignor, its successors, successors in title and assigns.

11.　　This Agreement shall be governed by and construed in accordance with the laws of the State of Michigan applied to contracts to be performed wholly within the State of Michigan.

12.　　This Agreement is subject to the Subordination Agreement.

**[SIGNATURE PAGE FOLLOWS]**

**[SIGNATURE PAGE 1 OF 2 TO
COLLATERAL ASSIGNMENT]**

IN WITNESS WHEREOF, the parties have executed this instrument under seal as of the day and year first above written.

CATTLEMAN'S MEAT COMPANY,
a Michigan corporation

By: _____

Name:  David Rohtbart

Title:   President

[SIGNATURE PAGE 2 OF 2 TO
COLLATERAL ASSIGNMENT]

PNC BANK, NATIONAL ASSOCIATION

By: _____
Name: Angus J. White
Title:   Vice President

## SCHEDULE I

## ASSIGNED CONTRACTS

1.    Credit Extension Agreement dated as of January 31, 2006, by and between Cattleman's Meat Company and Scala Packing Company, Inc., a/k/a Scala Packing Co.

2.    Security Agreement dated as of January 31, 2006, by and between Cattleman's Meat Company and Scala Packing Company, Inc., a/k/a Scala Packing Co.

3.    UCC-1 Financing Statement naming Scala Packing Company, Inc. as debtor and Cattleman's Meat Company as secured party, filed with the Illinois Secretary of State on February 14, 2006.

## CREDIT EXTENSION AGREEMENT

This Credit Extension Agreement (this "Agreement") is entered into as of January 31, 2006 ("Effective Date") between Cattleman's Meat Company, a Michigan corporation, whose address is 1825 Scott Street, Detroit, Michigan 48207 ("Cattleman's"), and Scala Packing Company, Inc., a/k/a Scala Packing Co., an Illinois corporation, whose address is 707 North Orleans St., Chicago, Illinois 60610 ("Scala").

RECITALS:

A.    Cattleman's is in the business of processing and selling beef cuts, trimmings and other products (collectively, "Products") to meat processors, food services, and grocery retail customers.

B.    Scala purchases Products from Cattleman's.

C.    Cattleman's is willing to extend credit to Scala to assist Scala with its Product purchases from Cattleman's.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein and for good and other valuable consideration, Cattleman's and Scala agree as follows:

1.    **Credit.**

a.    The parties acknowledge and agree that as of the Effective Date Cattleman's has extended credit to Scala for Product purchases in the principal amount of Three Hundred Eighty-Six Thousand Two Hundred Eighty-One and 00/100 ($386,281.00) Dollars (the "Current Credit").

b.    Cattleman's intends to, sell additional Products to Scala on credit (individually, "Future Credit Advance;" collectively, "Future Credit Advances"), subject to, and in accordance with the terms of this Agreement. The aggregate amount of the Future Credit Advances shall not exceed   Four Hundred Fifty Thousand and 00/100 ($450,000.00) Dollars, unless otherwise mutually agreed in writing by Cattleman's and Scala. The parties acknowledge that as of the Effective Date, Cattleman's has extended to Scala Future Credit Advances in the principal amount of Three Hundred Fifteen Thousand Forty-Nine and 00/100 ($315,049.00) Dollars.

2.    **Repayment of Credit Advanced.**

a.    The Current Credit shall not commence to accrue interest until May 1, 2006. From and after May 1, 2006, interest shall accrue on the unpaid balance of the Current Credit, at the per annum rate of two (2) percentage points over the prime rate established by LaSalle Bank, N.A., as the same may vary from time to time (the "Applicable Rate"). On the first day of each month, commencing on March 1, 2006, Scala shall pay to Cattleman's the principal amount of Sixteen Thousand Ninety-Five and 04/100 ($16,095.04) Dollars, together with any accrued interest, until

1


PLAINTIFF'S
EXHIBIT
Group 2A
PENGAD 800-631-6989

such time as the Current Credit, together with all accrued and unpaid interest thereon, has been paid in full.

      b.  Scala shall pay each Future Credit Advance within thirty-five (35) days after the date the Product, for which the Future Credit Advance was made, is shipped (the "Shipment Date") to Scala. Interest shall accrue at the Applicable Rate on each Future Credit Advance if not paid within thirty-five (35) days after the Shipment Date.

   3.  **Security Agreement.**

      a.  As inducement for Cattleman's to enter into this Agreement and as security for repayment of the credit advanced by Cattleman's to Scala hereunder, Scala has granted to Cattleman's a security interest in Scala's inventory and accounts and proceeds thereof, pursuant to a Security Agreement executed by Scala and dated of even date herewith (the "Security Agreement").

   4.  **Events of Default.**  The occurrences listed below shall be deemed events of default and shall entitle Cattleman's, at Cattleman's option and without notice except as required by law, to exercise any one (1) or any combination of remedies under this Agreement or permitted by law:

     a.    the failure by Scala to make any payment when due under this Agreement within ten (10) days after written notice from Cattleman's, provided however that a minimum payment for any month of ten thousand ($10,000) plus interest shall prevent default;

     b.    a default by Scala under the Mortgage, the Security Agreement, or any other agreement entered into between Cattleman's and Scala or by Scala in favor of Cattleman's, including, without limitation, any loan agreements, notes, and other security agreements;

     c.    the appointment by a court of a receiver or trustee of Scala or for any property of Scala;

     d.    a decree by a court adjudicating Scala a bankrupt or insolvent, or for the sequestration of any of Scala's property;

     e.    the filing of a petition in bankruptcy by or against Scala under the federal Bankruptcy Code or any similar statute that is in effect;

     f.    an assignment by Scala for the benefit of creditors or a written admission by Scala of the inability to pay debts generally as they become due; and

   5.  **Default Remedies.**  Upon the occurrence of an event of default, Cattleman's shall have the option, in addition to and not in lieu of all other rights and remedies provided by law, to: (a) without notice, except as expressly required by law, declare any and all credit extended hereunder, together with any and all interest accrued thereon, to be immediately due and payable;

and (b) institute any proceedings that Cattleman's deems necessary to collect such amounts and otherwise enforce the terms of this Agreement, the Security Agreement. Scala agrees to reimburse Cattleman's for any and all costs and expenses, including, without limitation, court costs, legal expenses, and reasonable attorneys' fees, incurred in collecting or attempting to collect the amounts owed by Scala to Cattleman's under this Agreement or incurred in any other matter relating to this Agreement.

6. **Acknowledgements by Scala.** Scala acknowledges and agrees that: (a) nothing contained in this Agreement shall obligate Cattleman's to make future Product sales/shipments or Future Credit Advances to Scala; and (b) Cattleman's may suspend Future Credit Advances hereunder at any time and from time to time without notice to Scala in Cattleman's sole discretion. All parties shall act in good faith.

7. **Waiver of Jury Trial.** **CATTLEMAN'S AND SCALA ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL RIGHT BUT THAT SUCH RIGHT MAY BE WAIVED. EACH PARTY, AFTER CONSULTING, OR HAVING THE OPPORTUNITY TO CONSULT, WITH COUNSEL OF ITS CHOICE KNOWINGLY AND VOLUNTARILY, AND FOR THE MUTUAL BENEFIT OF CATTLEMAN'S AND SCALA, WAIVES ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF LITIGATION REGARDING THE PERFORMANCE OR ENFORCEMENT OF, OR IN ANY WAY RELATED TO, THIS AGREEMENT.**

8. **Venue and Jurisdiction.** Venue for any action brought with regard to this Agreement shall be in any appropriate Michigan court. Scala consents to personal jurisdiction over it by any Michigan courts to the extent personal jurisdiction may be necessary to enforce any of the provisions of this Agreement.

9. **Miscellaneous.** This Agreement shall be interpreted and construed in accordance with the laws of the State of Michigan. The parties may execute this Agreement in any number of counterparts, each of which, when executed shall have the force and effect of an original, but all such counterparts shall constitute one and the same agreement. For purposes of this Agreement, a facsimile signature shall be deemed the same as an original. If any paragraph, subparagraph, sentence or provision shall be invalid or unenforceable, it shall not affect any of the remaining provisions of this Agreement, and all provisions shall be given full force and effect separately from the unenforceable or invalid paragraph, subparagraph, sentence or provision as the case may be. Any waiver by either party of a breach of any provision of this Agreement shall not operate as or be construed to be a waiver of any other breach of said provision or of any breach of any other provision of this Agreement. The failure of any party to insist upon strict adherence to any term of this Agreement on any one (1) or more occasion(s) shall not be considered a waiver of or deprive that party of the right thereafter to insist upon strict adherence to that term or any other term of this Agreement. Time is deemed to be of the essence of all undertakings and agreements of the parties hereto. This Agreement constitutes the entire understanding between the parties with respect to the subject matter of this Agreement and supersedes any prior discussions, negotiations, agreements and understandings. The terms of this Agreement may not be amended, waived, or modified except in a writing signed by both parties.

**CATTLEMAN'S MEAT COMPANY,**
a Michigan corporation

By: _____

Its: _____


**SCALA PACKING COMPANY, INC.,**
a/k/a Scala Packing Co.,
an Illinois corporation

By: _____

Its: _____

4

## SECURITY AGREEMENT

The undersigned ("Debtor") hereby grants to **CATTLEMAN'S MEAT COMPANY**, a Michigan corporation, whose address is 1825 Scott Street, Detroit, Michigan 48207 ("Secured Party"), a continuing security interest in all of following described property of Debtor wherever located, now owned and hereafter acquired by Debtor, used or usable in connection with Debtor's business, and all proceeds thereof, including, but not limited to, any insurance and/or insurance proceeds (collectively called "Collateral")  This debt is subordinated to current or future primary mortgage lender

(a)    All inventory, as that term is defined in the Uniform Commercial Code ("UCC"), wherever located, no owned or in the future acquired by Debtor; any and all bills of lading, warehouse receipts, and other documents of title evidencing inventory; and any and all rights of stoppage in transit of inventory, and all chattel paper evidencing any past, present, or future leasing of inventory; and all letter of credit rights under all existing and future letters of credit securing all or part of the purchase price of inventory that has been or is in the future sold by Debtor.

(b)    All accounts receivable, notes and loans receivable, all rights of Debtor to payment for goods sold or leased, or to be sold or leased or for services rendered, or to be rendered, together with all rights, title and interest of Debtor, including the right of stoppage in transit, in and to all goods the sale, delivery, or lease of which by Debtor gave rise to such rights to payment, and all other obligations to and rights of Debtor for the payment of money, and all proceeds thereof, and all books, records and documents at any time evidencing or relating to any of the foregoing.

(c)    all cash and non cash proceeds and products of other proceeds and products which relate to the Collateral.

(d)    all replacements, substitutions, or additions, accessions, or increase in or to an of the Collateral.

(e)    All of Debtor's books and records which relate to the Collateral.

THIS SECURITY INTEREST SECURES PAYMENT AND PERFORMANCE OF ALL INDEBTEDNESS AND OBLIGATIONS NOW AND HEREAFTER OWING BY DEBTOR TO SECURED PARTY (collectively called, the "Indebtedness"), including all obligations of Debtor under this Agreement, and that certain Credit Extension Agreement, dated as of January 31, 2006 (the "Credit Extension Agreement") between Debtor and Secured Party.

This security interest secures all present and future indebtedness and obligations owing by Debtor to Secured Party, regardless of whether any such indebtedness or obligation is:  (a) not listed above, (b) not presently intended or contemplated by Debtor or Secured Party, (c) indirect, contingent, or secondary, (d) unrelated to the Collateral or to any financing of the Collateral by Secured Party, (e) of a kind cr class that is different from any indebtedness or obligation now



PLAINTIFF'S EXHIBIT

Group 2B

PENGAD 800-631-6989

owing by Debtor to Secured Party, or (f) evidenced by a note or other document that does not refer to this security interest or this Agreement.

If Debtor is more than one person, the Indebtedness includes all indebtedness and obligations now and hereafter owing to Secured Party by any one or more of such persons, regardless of whether the remaining person or persons are not liable for such indebtedness and obligations or whether one or more persons who are not parties to this Agreement are also liable for all or part of such indebtedness and obligations.

1.    **Warranties and Representations and Agreements.** Debtor warrants and represents to, and agrees with, Secured Party as follows:

(a)    If Debtor is a corporation, partnership, limited liability company, association, trust or other entity, it is duly organized and validly existing in good standing under the laws of the state indicated below Debtor's name at the end of this Agreement; Debtor has full power and authority to enter into and perform its obligations under this Agreement; the execution, delivery and performance of this Agreement have been duly authorized by all necessary action of Debtor's board of directors, partners, members, trustees or other governing body and will not violate Debtor's articles or certificate of incorporation, articles of organization, bylaws, partnership agreement, articles of association, trust agreement or other governing instrument.

(b)    This Agreement is the valid and binding obligation of Debtor, enforceable in accordance with its terms.

(c)    Except as disclosed to secured party, debtor is the owner of the Collateral, and none of the Collateral is subject to any lien, security interest, encumbrance or claim in favor of any third party, and no financing statement is on file in any public office covering any of the Collateral.

(d)    Any part of the Collateral consisting of accounts or chattel paper does and will evidence bona fide sales or leases to the parties named in Debtor's books, and no defense to any account or chattel paper does or will exist.

(e)    Debtor's address set forth at the end of this Agreement is the location of either (i) Debtor's sole place of business, or (ii) if Debtor has more than one place of business, Debtor's chief executive office, or (iii) if Debtor has neither a place of business nor a chief executive office, Debtor's residence.

2.    **Agreements of Debtor.** Debtor agrees that:

(a)    Debtor will not cause or permit any lien, security interest or encumbrance to be placed on any Collateral, except in favor of Secured Party or primary mortgage lender, and Debtor will not sell, assign or transfer any Collateral or permit any Collateral to be transferred by operation of law, except that so long as no event of default has occurred, Debtor may sell inventory in the ordinary course of Debtor's business.  A sale in the ordinary course of business

does not include a transfer in partial or complete satisfaction of a debt.   Other than a transaction which pays in full secured party.

(b)     Debtor will maintain all records concerning the Collateral at Debtor's address appearing at the end of this Agreement and will keep all Collateral (other than any vehicle being operated in the ordinary course of business) at the present location or locations of the Collateral.

(c)     Debtor will furnish Secured Party with such information regarding the Collateral as Secured Party shall from time to time request (including, without limitation, the names and addresses of Debtor's account debtors and the amount owing by each) and will allow Secured Party at any reasonable time to inspect the Collateral and Debtor's records regarding the Collateral.

(d)     Debtor will, or authorizes Secured Party to, execute, file, record, or procure from third persons, such financing statements, subordination agreements and other documents, and take all such other action, as Secured Party may deem necessary to perfect, to continue perfection of, or to maintain first priority of, Secured Party's security interest in the Collateral, and Debtor will place upon the Collateral and/or documents evidencing the Collateral such notice of Secured Party's security interest as Secured Party may from time to time require.

(e)     Secured Party may file a photocopy of this Agreement as a financing statement evidencing Secured Party's security interest in the Collateral.

(f)     Secured Party may from time to time contact Debtor's account debtors for the purpose of verifying the existence, amount and collectibility of, and other information regarding, Debtor's accounts, chattel paper, instruments, or general intangibles.

(g)     Debtor will immediately notify Secured Party in writing:   (i) of any change in Debtor's name, identity or corporate structure, (ii) if Debtor now has only one place of business, of any change in its location and of the location of each additional place of business established by Debtor, (iii) if Debtor now or hereafter has more than one place of business, of any change in the location of Debtor's chief executive office, and (iv) if Debtor has neither a place of business nor a chief executive office, of any change in the location of Debtor's residence.

(h)     Debtor will indemnify Secured Party with respect to all losses, damages, liabilities and expenses (including attorneys' fees) incurred by Secured Party by reason of any failure of Debtor to comply with any of Debtor's obligations under this Agreement or by reason of any warranty or representation made by Debtor to Secured Party in this Agreement being false in any material respect.

(i)     Debtor shall not modify or forgive any accounts except in the ordinary course of business.

3.     **Secured Party's Right to Perform.**  If Debtor fails to perform any obligation of Debtor under this Agreement  Secured Party may, without giving notice to or obtaining the consent of Debtor, perform that obligation on behalf of Debtor.  (This may include, for example,

obtaining insurance coverage for Collateral or paying off liens on Collateral.) To the extent necessary, Debtor appoints Secured Party as Debtor's agent and attorney-in-fact with full power and authority to perform any such obligation. Debtor will reimburse Secured Party on demand for any expense that Secured Party incurs in performing any such obligation and will pay to Secured Party interest thereon, from the date the expense was incurred by Secured Party, at an annual rate equal to the lesser of: (a) five percent (5%) above the rate of interest announced from time to time by LaSalle Bank, N.A. as its "prime" interest rate, or (b) the highest rate to which Debtor could lawfully agree in writing. Secured Party is not required to perform an obligation that Debtor has failed to perform. If Secured Party does so, that will not be a waiver of Secured Party's right to declare the Indebtedness immediately due and payable by reason of Debtor's failure to perform.

4.    **Events of Default and Acceleration.**  Any part or all of the Indebtedness shall, at the option of Secured Party, become immediately due and payable without notice or demand upon the occurrence of any of the following events of default:

(a)    If default occurs in the payment or performance of any of the Indebtedness, when and as it shall be due and payable. Debtor has five (5) business day cure period.

(b)    If default occurs in the performance of any obligation of Debtor to Secured Party under this Agreement, the Credit Extension Agreement, or any promissory note or other instrument at any time evidencing any Indebtedness or under any other security agreement, loan agreement, mortgage, assignment, guaranty, or other agreement that now or hereafter secures or relates to any of the Indebtedness or any other indebtedness or obligation now or hereafter owing by Debtor to Secured Party or that secures or relates to any guaranty of any of the Indebtedness or any guaranty of any such other indebtedness or obligation (individually, "Security Document;" collectively, "Security Documents"). . Debtor has five (5) business day cure period.

(c)    If any warranty, representation, or statement heretofore or hereafter made to Secured Party by Debtor or by any guarantor of all or part of the Indebtedness ("Guarantor") in this Agreement or in any Security Document, credit application, financial statement, or otherwise, shall have been false in any material respect when made or furnished.

(d)    If Debtor or any of Debtor's partners (if Debtor is a partnership) or any Guarantor shall die, dissolve, become insolvent or make an assignment for the benefit of creditors.

(e)    If any guaranty that now or hereafter secures payment or performance of all or any part of the Indebtedness shall be terminated or limited for any reason, without the written consent or agreement of Secured Party.

(f)    If all or any material part of any Collateral consisting of inventory shall be destroyed or materially damaged by fire or other casualty, whether or not there is insurance coverage for the damage or destruction.

If a voluntary or involuntary case in bankruptcy, receivership, or insolvency shall at any time be commenced by or against Debtor or any Guarantor or any of Debtor's or any Guarantor's

partners (if Debtor or any Guarantor is a partnership) or if any attachment, garnishment, levy, execution or other legal process shall at any time be issued against or placed upon any Collateral, then the entire Indebtedness shall automatically become immediately due and payable, without notice or demand. All or part of the Indebtedness also may become, or may be declared to be, immediately due and payable under the terms of any note at any time evidencing any of the Indebtedness or of any loan agreement, Security Document or other agreement heretofore or hereafter entered into between Debtor and Secured Party. Debtor has ninety (90) day to cure default in regards to an involuntary bankruptcy.

5.    **Remedies.** Secured Party shall have all the rights and remedies of a secured party under applicable laws. Without limiting those rights and remedies, if all or any part of the Indebtedness is not paid at maturity plus five (5) business days for a cure period:

(a)    Without notice or demand to Debtor, Secured Party shall be entitled to notify Debtor's account debtors and obligors to make all payments directly to Secured Party, and Secured Party shall have the right to take all actions that Secured Party considers necessary or desirable to collect upon the Collateral consisting of accounts, contract rights, chattel paper, and general intangibles, including, without limitation, prosecuting actions against, or settling or compromising disputes and claims with, Debtor's account debtors and obligors and without notice or demand to Debtor, Secured Party may receive, open, dispose of, and notify the postal authorities to change the address of, mail directed to Debtor.

(b)    Upon demand by Secured Party, Debtor shall deliver the Collateral and proceeds of Collateral to Secured Party at such place as Secured Party shall designate and all books, records, agreements, leases, documents, and instruments evidencing or relating to the Collateral.

(c)    Secured Party may dispose of the Collateral in any commercially reasonable manner. Any notification required to be given by Secured Party to Debtor regarding any sale or other disposition of Collateral shall be considered reasonable if mailed at least five (5) days before the sale or other disposition.

(d)    The proceeds of any collection or disposition of the Collateral shall be applied first to Secured Party's attorneys' fees and expenses, as provided in Paragraph 6, and then to the Indebtedness, in such manner as Secured Party shall determine, and Debtor shall be liable for any deficiency remaining.

(e)    Secured Party shall have the right (but no obligation) to continue or complete the manufacturing or processing of, or other operations in connection with, any part of the Collateral consisting of inventory and, for such purpose, to enter and remain upon or in any land or buildings that are possessed by Debtor or that Debtor has the right to possess. Debtor will reimburse Secured Party on demand for any expense that Secured Party incurs in connection therewith and will pay to Secured Party interest thereon, from the date the expense was incurred by Secured Party, at the rate specified in Paragraph 3.

All rights and remedies of Secured Party shall be cumulative and may be exercised from time to time.

6.     **Expenses.**  Debtor shall reimburse Secured Party on demand for all attorneys' fees, legal expenses, and other expenses that Secured Party incurs in protecting and enforcing its rights under this Agreement.   This includes fees and expenses incurred in trying to take possession of Collateral from Debtor, a trustee or receiver in bankruptcy or any other person. Secured Party may apply any proceeds of disposition or collection of Collateral to Secured Party's attorneys' fees, legal expenses, and other expenses.

7.     **Amendments and Waivers.**  No provision of this Agreement may be modified or waived except by a written agreement signed by Secured Party.  Secured Party will continue to have all of its rights under this Agreement even if it does not fully and promptly exercise them on all occasions.

8.     **Notices.**  Any notice to Debtor or to Secured Party shall be deemed to be received two (2) business days after mailed by certified mail, with postage prepaid, to the respective address of Debtor or Secured Party appearing herein, or if and when delivered personally.

9.     **Other.**  In this Agreement, "maturity" of any of the Indebtedness means the time when that Indebtedness has become due and payable, for whatever reason (including, for example, acceleration due to default or bankruptcy).  If Debtor is more than one person, their obligations under this Agreement are joint and several, and the term "Debtor" refers to each and all of them.  This Agreement shall be binding upon and inure to the benefit of Debtor and Secured Party and their respective heirs, personal representatives, successors, and assigns.

Executed this 31st day of January 31, 2006.

Secured Party:

**CATTLEMAN'S MEAT COMPANY,**
a Michigan corporation

By: _____

Its: _____C E O_____

Debtor:

**SCALA PACKING COMPANY, INC.,**
a/k/a Scala Packing Co.,
an Illinois corporation

By: _____

Its: _____president_____

Taxpayer I.D. No.:  36-2134671

Address:
707 N. Orleans St., Chicago, Illinois 60610

6

**CORPORATION SERVICE COMPANY**
www.incspot.com

CSC- Springfield
801 Adlai Stevenson Drive
Springfield, IL 62703
217-544-5900
217-492-2727 (Fax)

Matter#    4980.15368
Project Id :
Additional Reference :        NOT PROVIDED

Order#        865748-1
Order Date    02/13/2006

Entity Name :              SCALA PACKING COMPANY, INC.   (Debtor)/ CATTLEMAN'S
                          MEAT COMPANY   (Secured Party)

Jurisdiction :            IL-SECRETARY OF STATE

Request for :             UCC Filing
File Type :               ORIGINAL

Result :                  Filed

File Number :             10653029
Filing Date :             02/14/2006

Ordered by CASSANDRA FARLEY at SEYBURN, KAHN, GINN, BESS AND SERLIN, P.C.

ik you for using CSC.  For real-time 24 hour access to the status of any order placed with CSC, access our website at
w.incspot.com.

If you have any questions concerning this order or IncSpot,  please feel free to contact us.

Cindy Straub
cstraub@cscinfo.com

The responsibility for verification of the files and determination of the information therein lies with the filing officer; we accept no liability for errors or omissions.

**ACKNOWLEDGEMEN**
UNIFORM C...

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

2006 FEB 14  AM 9:10

A. NAME & PHONE OF CONTACT AT FILER [optional]
Cassandra. Y. Farley  (248) 353-7620

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Mark S. Cohn, Esq.
Seyburn, Kahn, Ginn, Bess & Serlin, P.C.
2000 Town Center, Suite 1500
Southfield, Michigan 48075

UCU102/15/06:02:2857:
20.00 MB
SOSIL 11:50  10653029 FS

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME
SCALA PACKING COMPANY, INC.

OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

1c. MAILING ADDRESS
707 N. ORLEANS ST. | CITY CHICAGO | STATE IL. | POSTAL CODE 60610 | COUNTRY USA

1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any
36-2134671 | | CORPORATION | ILLINOIS | 31215285 | ☐ NONE

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

2a. ORGANIZATION'S NAME

OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | ☐ NONE

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME
CATTLEMAN'S MEAT COMPANY

OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

3c. MAILING ADDRESS
1825 SCOTT STREET | CITY DETROIT | STATE MI | POSTAL CODE 48207 | COUNTRY USA

4. This FINANCING STATEMENT covers the following collateral:

SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF.



PLAINTIFF'S
EXHIBIT
Group 2C

5. ALTERNATIVE DESIGNATION (if applicable): | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING
6. ☐ This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2
8. OPTIONAL FILER REFERENCE DATA
File with Illinois Secretary of State

Document No. 13454    File No. 4980.15368

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

865748-1
CS2

# EXHIBIT A

## Collateral

(a)    All inventory, as that term is defined in the Uniform Commercial Code ("UCC"), wherever located, no owned or in the future acquired by Debtor; any and all bills of lading, warehouse receipts, and other documents of title evidencing inventory; and any and all rights of stoppage in transit of inventory, and all chattel paper evidencing any past, present, or future leasing of inventory; and all letter of credit rights under all existing and future letters of credit securing all or part of the purchase price of inventory that has been or is in the future sold by Debtor;

(b)    All accounts receivable, notes and loans receivable, all rights of Debtor to payment for goods sold or leased, or to be sold or leased or for services rendered, or to be rendered, together with all rights, title and interest of Debtor, including the right of stoppage in transit, in and to all goods the sale, delivery, or lease of which by Debtor gave rise to such rights to payment, and all other obligations to and rights of Debtor for the payment of money, and all proceeds thereof, and all books, records and documents at any time evidencing or relating to any of the foregoing;

(c)    All cash and non cash proceeds and products of other proceeds and products which relate to the Collateral;

(d)    All replacements, substitutions, or additions, accessions, or increase in or to an of the Collateral; and

(e)    All of Debtor's books and records which relate to the Collateral.

RECEIVED
SECRETARY OF STATE
UNIFORM COMMERCIAL CODE DIV.

UCU104/13/07:03:8438:
20.00  AH
SOSIL 13:50  8867010 AS

# UCC FINANCING STATEMENT AMENDMENT  07 APR 13  PM 1:14

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

CSC

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # | | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|---|
| 10653029 | 2/14/2006 | ☐ |

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**3.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4.** ☒ **ASSIGNMENT** (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

**5. AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Please refer to the detailed instructions regards to changing the name/address of a party.   ☐ DELETE name: Give record name to be deleted in item 6a or 6b.   ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

**6. CURRENT RECORD INFORMATION:**

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

**7. CHANGED (NEW) OR ADDED INFORMATION:**

| 7a. ORGANIZATION'S NAME   PNC BANK, NATIONAL ASSOCIATION, AS AGENT | | | |
|---|---|---|---|
| OR  7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS   500 FIRST AVENUE | CITY   PITTSBURGH | STATE  PA | POSTAL CODE  15219 | COUNTRY  USA |
|---|---|---|---|---|

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**8. AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment

| 9a. ORGANIZATION'S NAME   CATTLEMAN'S MEAT COMPANY | | | |
|---|---|---|---|
| OR  9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA**
Debtor: SCALA PACKING COMPANY, INC.      FULL ASSIGNMENT      ILLINOIS SECRETARY OF STATE

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

RT2 880305KS

## UC C FINANCING STATEMENT AMENDMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

| 11 INITIAL FINANCING STATEMENT FILE # (same as Item 1a on Amendment form) |
|---|
| 10653029          2/14/2006 |

12 NAME OF PARTY AUTHORIZING THIS AMENDMENT (same as Item 9 on Amendment form)

12a. ORGANIZATION'S NAME
**CATTLEMAN'S MEAT COMPANY**

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
|---|---|---|
|  |  |  |

13 Use this space for additional information

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

COMPLETE ADDRESS OF ASSIGNEE SECURED PARTY:

COMMERCIAL LOAN SERVICE CENTER/DCC
500 FIRST AVENUE
PITTSBURGH, PA 15219
USA



| Date | Invoice | | Amount | Amount | Amount |
|---|---|---|---|---|---|
| | | | 29,191.54 | | 0.00 |
| | | | 3,952.86 | | |
| 10/16/2006 | | | | | |
| 10/17/2006 | 85977 | INV | 33,726.56 | 29,773.70 | 29,773.70 |
| 10/20/2006 | 86041 | INV | 16,140.99 | 16,140.99 | 16,140.99 |
| 10/23/2006 | 86140 | INV | 16,392.71 | 16,392.71 | 16,392.71 |
| 10/24/2006 | 85211 | INV | 18,531.44 | 18,531.44 | 18,531.44 |
| 10/25/2006 | 85393 | INV | 4,568.97 | 4,568.97 | 4,568.97 |
| 10/26/2006 | 86476 | INV | 10,027.56 | 10,027.56 | 10,027.56 |
| 10/27/2006 | 86567 | INV | 19,455.70 | 19,455.70 | 19,455.70 |
| 10/29/2006 | 86682 | INV | 13,554.28 | 13,554.28 | 13,554.28 |
| 11/02/2006 | 86736 | INV | 4,841.99 | 4,841.99 | 4,841.99 |
| 11/03/2006 | 86795 | INV | 14,543.70 | 14,543.70 | 14,543.70 |
| 11/06/2006 | 86880 | INV | 11,546.96 | 11,546.96 | 11,546.96 |
| 11/09/2006 | 86916 | INV | 21,191.55 | 21,191.55 | 21,191.55 |
| 11/10/2006 | 86951 | INV | 6,130.18 | 6,130.18 | 6,130.18 |
| 11/13/2006 | 87039 | INV | 11,388.76 | 11,388.76 | 11,388.76 |
| 11/14/2006 | 87073 | INV | 25,346.34 | 25,346.34 | 25,346.34 |
| 11/15/2006 | 87207 | INV | 11,820.14 | 11,820.14 | 11,820.14 |
| 11/16/2006 | 87318 | INV | 13,273.18 | 13,273.18 | 13,273.18 |
| 11/20/2006 | 87370 | INV | 5,684.01 | 6,747.42 | 6,747.42 |
| 11/21/2006 | 87435 | INV | 6,747.42 | 6,684.01 | 6,684.01 |
| 11/22/2006 | 87465 | INV | 12,796.17 | 12,796.17 | 12,796.17 |
| 11/24/2006 | 87566 | INV | 17,771.02 | 17,771.02 | 17,771.02 |
| 11/27/2006 | 87618 | INV | 9,682.38 | 9,682.38 | 9,682.38 |
| 11/28/2006 | 87651 | INV | 17,737.21 | 17,737.21 | 17,737.21 |
| 12/01/2006 | 87736 | INV | 19,829.56 | 19,829.56 | 19,829.56 |
| 12/01/2006 | 87795 | INV | 24,046.71 | 24,046.71 | 24,046.71 |
| 12/04/2006 | 87966 | INV | 39,675.02 | 39,675.02 | 39,675.02 |
| 12/04/2006 | 88005 | INV | 9,527.76 | 9,527.76 | 9,527.76 |
| 12/06/2006 | 88148 | INV | 12,437.74 | 12,437.74 | 12,437.74 |
| 12/07/2006 | 88210 | INV | 19,804.63 | 19,804.63 | 19,804.63 |
| 12/08/2006 | 88251 | INV | 14,266.69 | | 14,266.69 |
| 12/11/2006 | 88331 | INV | 6,527.76 | | 4,202.68 |
| 12/11/2006 | 88409 | INV | 4,202.68 | | 13,001.31 |
| 12/12/2006 | | INV | 13,001.31 | | 24,933.96 |
| 12/14/2006 | | INV | 24,933.96 | | |
| 12/15/2006 | | | 56,404.64 | 445,267.78 | 501,672.42 |
| 12/18/2006 | | | | | |
| 12/19/2006 | | | | | |
| 12/21/2006 | | | | | |
| 12/22/2006 | | | | | |
| 12/26/2006 | | | | | |
| 12/29/2006 | | | | | |
| 01/02/2007 | | | | | |
| 01/03/2007 | | | | | |
| 01/05/2007 | | | | | |
| 01/08/2007 | | | | | |
| 01/09/2007 | | | | | |
| 01/10/2007 | | | | | |
| 01/11/2007 | | | | | |
| 01/12/2007 | | | | | |
| 01/15/2007 | | | | | |
| 01/17/2007 | | | | | |
| 01/18/2007 | | | | | |

PLAINTIFF'S
EXHIBIT
3
PENGAD 800-631-6989