## COLLATERAL ASSIGNMENT

THIS **COLLATERAL ASSIGNMENT** (the "Assignment") is made and entered into the 26th day of September, 2006, by Cattleman's Meat Company, a Michigan corporation ("Assignor"), in favor of PNC Bank, National Association, as Agent ("Assignee").

### WITNESSETH:

WHEREAS, pursuant to that certain Revolving Credit, Term Loan and Security Agreement (as it may hereafter from time to time be restated, amended, modified or supplemented, the "Credit Agreement") of even date herewith by and among Cattleman's, Inc., Cattleman's Meat Company and Cattleman' Premium Products, LLC, as borrowers (the "Borrowers"), the Lenders now or hereafter party thereto ("Lenders") and Assignee, Assignee and Lenders have agreed to provide certain loans to Borrowers; and

WHEREAS, in order to provide additional security for the repayment of such loans, the parties hereto desire that Assignee for the benefit of Lenders be granted an assignment and security interest in all rights (but not the obligations) of Assignor under those certain contracts listed on Schedule I (each an "Assigned Contract" and collectively the "Assigned Contracts").

NOW, THEREFORE, in consideration of the promises and covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are acknowledged by Assignor, and intending to be legally bound, Assignor assigns to Assignee for the benefit of Lenders all of its right, title and interest in and to each Assigned Contract to the fullest extent permitted by law.

1.  Except as otherwise expressly provided herein, capitalized terms used in this Assignment shall have the respective meanings given to them in the Credit Agreement.

2.  As security for the Obligations, Assignor has granted, bargained, sold, assigned, transferred and set over and by these presents does hereby grant, bargain, sell, assign, transfer and set over unto Assignee on behalf of Lenders, its and their respective successors and assigns, all the rights, interests and privileges which Assignor has or may have in or under each Assigned Contract, including the present and continuing right with full power and authority, in its own name, or in the name of Assignor, or otherwise, but subject to the provisions and limitations of Section 3, (i) to make claim for, enforce, perform, collect and receive any and all rights under each Assigned Contract, (ii) to do any and all things which Assignor is or may become entitled to do under each Assigned Contract, and (iii) to make all waivers and agreements, give all notices, consents and releases and other instruments and to do any and all other things whatsoever which Assignor is or may become entitled to do under each Assigned Contract.

3.  The acceptance of this Assignment and the payment or performance under the Assigned Contracts shall not constitute a waiver of any rights of Assignee or Lenders under the terms of the Notes, the Credit Agreement or any of the Other Documents, it being understood


PLAINTIFF'S EXHIBIT
1

that, until the occurrence of a Default or an Event of Default, and the exercise of Assignee's, on behalf of Lenders, rights under Section 4, Assignor shall have all rights to the Assigned Contracts and to retain, use and enjoy the same.

4. Assignor, upon the occurrence of a Default or an Event of Default, hereby authorizes Assignee, at Assignee's option, to do all acts required or permitted under any Assigned Contract as Assignee, acting as Agent to Lenders, in its sole discretion may deem proper. Assignor does hereby irrevocably constitute and appoint Assignee, while this Assignment remains in force and effect and, in each instance, to the full extent permitted by applicable law, its true and lawful attorney in fact, coupled with an interest and with full power of substitution and revocation, for Assignor and in its name, place and stead, to demand and enforce compliance with all the terms and conditions of each Assigned Contract and all benefits accrued thereunder, whether at law, in equity or otherwise; provided, however, that Assignee shall not exercise any such power unless and until a Default or an Event of Default shall have occurred.

5. Assignee on behalf of Lenders shall not be obligated to perform or discharge any obligation or duty to be performed or discharged by Assignor under any Assigned Contract, and Assignor hereby agrees to indemnify Assignee and Lenders for, and to save Assignee and Lenders harmless from, any and all liability arising under the Assigned Contracts.

6. Assignor agrees that this Assignment and the designation and directions herein set forth are irrevocable.

7. Neither this Assignment nor any action or inaction on the part of Assignee shall constitute an assumption on the part of Assignee of any obligations or duties under any Assigned Contract.

8. Assignor covenants and warrants that:

(a) it has the power and authority to assign each Assigned Contract and there have been no prior assignments of any Assigned Contract which are currently in effect;

(b) each Assigned Contract is and shall be a valid contract, and that there are and shall be, no defaults on the part of any of the parties thereto;

(c) it will not assign, pledge or otherwise encumber any Assigned Contract without the prior written consent of Assignee;

(d) it will not cancel, terminate or accept any surrender of any Assigned Contract, or amend or modify the same directly or indirectly in any material respect whatsoever, without having obtained the prior written consent of Assignee thereto;

(e) it will not waive or give any consent with respect to any default or variation in the performance under any Assigned Contract, it will at all times take proper steps to enforce all of the provisions and conditions thereof and it will forthwith notify Assignee of any default under any Assigned Contract;

    (f) it will perform and observe, or cause to be performed and observed, all of the terms, covenants and conditions on its part to be performed and observed with respect to each Assigned Contract; and

    (g) it will execute from time to time any and all additional assignments or instruments of further assurance to Assignee, as Assignee may at any time reasonably request.

  9. At such time as the Obligations are indefeasibly paid in full and the Credit Agreement has terminated, this Assignment and all of Assignee's and Lenders' right, title and interest hereunder with respect to the Assigned Contracts shall terminate.

  10. This Assignment shall inure to the benefit of Assignee, its respective successors and assigns, and shall be binding upon Assignor, its successors, successors in title and assigns.

  11. This Agreement shall be governed by and construed in accordance with the laws of the State of Michigan applied to contracts to be performed wholly within the State of Michigan.

  12. This Agreement is subject to the Subordination Agreement.

[SIGNATURE PAGE FOLLOWS]

[SIGNATURE PAGE 1 OF 2 TO
COLLATERAL ASSIGNMENT]

IN WITNESS WHEREOF, the parties have executed this instrument under seal as of the day and year first above written.

CATTLEMAN'S MEAT COMPANY,
a Michigan corporation

By: _____
Name: David Rohtbart
Title: President

[SIGNATURE PAGE 2 OF 2 TO
COLLATERAL ASSIGNMENT]

PNC BANK, NATIONAL ASSOCIATION

By: *(signature)*
Name: Angus J. White
Title: Vice President

## SCHEDULE I

## ASSIGNED CONTRACTS

1. Credit Extension Agreement dated as of January 31, 2006, by and between Cattleman's Meat Company and Scala Packing Company, Inc., a/k/a Scala Packing Co.

2. Security Agreement dated as of January 31, 2006, by and between Cattleman's Meat Company and Scala Packing Company, Inc., a/k/a Scala Packing Co.

3. UCC-1 Financing Statement naming Scala Packing Company, Inc. as debtor and Cattleman's Meat Company as secured party, filed with the Illinois Secretary of State on February 14, 2006.