## SECURITY AGREEMENT

The undersigned ("<u>Debtor</u>") hereby grants to CATTLEMAN'S MEAT COMPANY, a Michigan corporation, whose address is 1825 Scott Street, Detroit, Michigan 48207 ("<u>Secured Party</u>"), a continuing security interest in all of following described property of Debtor wherever located, now owned and hereafter acquired by Debtor, used or usable in connection with Debtor's business, and all proceeds thereof, including, but not limited to, any insurance and/or insurance proceeds (collectively called "<u>Collateral</u>") This debt is subordinated to current or future primary mortgage lenders.

(a)  All inventory, as that term is defined in the Uniform Commercial Code ("<u>UCC</u>"), wherever located, no owned or in the future acquired by Debtor; any and all bills of lading, warehouse receipts, and other documents of title evidencing inventory; and any and all rights of stoppage in transit of inventory, and all chattel paper evidencing any past, present, or future leasing of inventory; and all letter of credit rights under all existing and future letters of credit securing all or part of the purchase price of inventory that has been or is in the future sold by Debtor.

(b)  All accounts receivable, notes and loans receivable, all rights of Debtor to payment for goods sold or leased, or to be sold or leased or for services rendered, or to be rendered, together with all rights, title and interest of Debtor, including the right of stoppage in transit, in and to all goods the sale, delivery, or lease of which by Debtor gave rise to such rights to payment, and all other obligations to and rights of Debtor for the payment of money, and all proceeds thereof, and all books, records and documents at any time evidencing or relating to any of the foregoing.

(c)  all cash and non cash proceeds and products of other proceeds and products which relate to the Collateral.

(d)  all replacements, substitutions, or additions, accessions, or increase in or to an of the Collateral.

(e)  All of Debtor's books and records which relate to the Collateral.

THIS SECURITY INTEREST SECURES PAYMENT AND PERFORMANCE OF ALL INDEBTEDNESS AND OBLIGATIONS NOW AND HEREAFTER OWING BY DEBTOR TO SECURED PARTY (collectively called, the "<u>Indebtedness</u>"), including all obligations of Debtor under this Agreement, and that certain Credit Extension Agreement, dated as of January 31, 2006 (the "<u>Credit Extension Agreement</u>") between Debtor and Secured Party.

This security interest secures all present and future indebtedness and obligations owing by Debtor to Secured Party, regardless of whether any such indebtedness or obligation is: (a) not listed above, (b) not presently intended or contemplated by Debtor or Secured Party, (c) indirect, contingent, or secondary, (d) unrelated to the Collateral or to any financing of the Collateral by Secured Party, (e) of a kind cr class that is different from any indebtedness or obligation now

1



PLAINTIFF'S
EXHIBIT
Group 2B

owing by Debtor to Secured Party, or (f) evidenced by a note or other document that does not refer to this security interest or this Agreement.

If Debtor is more than one person, the Indebtedness includes all indebtedness and obligations now and hereafter owing to Secured Party by any one or more of such persons, regardless of whether the remaining person or persons are not liable for such indebtedness and obligations or whether one or more persons who are not parties to this Agreement are also liable for all or part of such indebtedness and obligations.

1. **Warranties and Representations and Agreements.** Debtor warrants and represents to, and agrees with, Secured Party as follows:

(a) If Debtor is a corporation, partnership, limited liability company, association, trust or other entity, it is duly organized and validly existing in good standing under the laws of the state indicated below Debtor's name at the end of this Agreement; Debtor has full power and authority to enter into and perform its obligations under this Agreement; the execution, delivery and performance of this Agreement have been duly authorized by all necessary action of Debtor's board of directors, partners, members, trustees or other governing body and will not violate Debtor's articles or certificate of incorporation, articles of organization, bylaws, partnership agreement, articles of association, trust agreement or other governing instrument.

(b) This Agreement is the valid and binding obligation of Debtor, enforceable in accordance with its terms.

(c) Except as disclosed to secured party, debtor is the owner of the Collateral, and none of the Collateral is subject to any lien, security interest, encumbrance or claim in favor of any third party, and no financing statement is on file in any public office covering any of the Collateral.

(d) Any part of the Collateral consisting of accounts or chattel paper does and will evidence bona fide sales or leases to the parties named in Debtor's books, and no defense to any account or chattel paper does or will exist.

(e) Debtor's address set forth at the end of this Agreement is the location of either (i) Debtor's sole place of business, or (ii) if Debtor has more than one place of business, Debtor's chief executive office, or (iii) if Debtor has neither a place of business nor a chief executive office, Debtor's residence.

2. **Agreements of Debtor.** Debtor agrees that:

(a) Debtor will not cause or permit any lien, security interest or encumbrance to be placed on any Collateral, except in favor of Secured Party or primary mortgage lender, and Debtor will not sell, assign or transfer any Collateral or permit any Collateral to be transferred by operation of law, except that so long as no event of default has occurred, Debtor may sell inventory in the ordinary course of Debtor's business. A sale in the ordinary course of business

does not include a transfer in partial or complete satisfaction of a debt. Other than a transaction which pays in full secured party...

(b) Debtor will maintain all records concerning the Collateral at Debtor's address appearing at the end of this Agreement and will keep all Collateral (other than any vehicle being operated in the ordinary course of business) at the present location or locations of the Collateral.

(c) Debtor will furnish Secured Party with such information regarding the Collateral as Secured Party shall from time to time request (including, without limitation, the names and addresses of Debtor's account debtors and the amount owing by each) and will allow Secured Party at any reasonable time to inspect the Collateral and Debtor's records regarding the Collateral.

(d) Debtor will, or authorizes Secured Party to, execute, file, record, or procure from third persons, such financing statements, subordination agreements and other documents, and take all such other action, as Secured Party may deem necessary to perfect, to continue perfection of, or to maintain first priority of, Secured Party's security interest in the Collateral, and Debtor will place upon the Collateral and/or documents evidencing the Collateral such notice of Secured Party's security interest as Secured Party may from time to time require.

(e) Secured Party may file a photocopy of this Agreement as a financing statement evidencing Secured Party's security interest in the Collateral.

(f) Secured Party may from time to time contact Debtor's account debtors for the purpose of verifying the existence, amount and collectibility of, and other information regarding, Debtor's accounts, chattel paper, instruments, or general intangibles.

(g) Debtor will immediately notify Secured Party in writing: (i) of any change in Debtor's name, identity or corporate structure, (ii) if Debtor now has only one place of business, of any change in its location and of the location of each additional place of business established by Debtor, (iii) if Debtor now or hereafter has more than one place of business, of any change in the location of Debtor's chief executive office, and (iv) if Debtor has neither a place of business nor a chief executive office, of any change in the location of Debtor's residence.

(h) Debtor will indemnify Secured Party with respect to all losses, damages, liabilities and expenses (including attorneys' fees) incurred by Secured Party by reason of any failure of Debtor to comply with any of Debtor's obligations under this Agreement or by reason of any warranty or representation made by Debtor to Secured Party in this Agreement being false in any material respect.

(i) Debtor shall not modify or forgive any accounts except in the ordinary course of business.

3. **Secured Party's Right to Perform**. If Debtor fails to perform any obligation of Debtor under this Agreement Secured Party may, without giving notice to or obtaining the consent of Debtor, perform that obligation on behalf of Debtor. (This may include, for example,

obtaining insurance coverage for Collateral or paying off liens on Collateral.) To the extent necessary, Debtor appoints Secured Party as Debtor's agent and attorney-in-fact with full power and authority to perform any such obligation. Debtor will reimburse Secured Party on demand for any expense that Secured Party incurs in performing any such obligation and will pay to Secured Party interest thereon, from the date the expense was incurred by Secured Party, at an annual rate equal to the lesser of: (a) five percent (5%) above the rate of interest announced from time to time by LaSalle Bank, N.A. as its "prime" interest rate, or (b) the highest rate to which Debtor could lawfully agree in writing. Secured Party is not required to perform an obligation that Debtor has failed to perform. If Secured Party does so, that will not be a waiver of Secured Party's right to declare the Indebtedness immediately due and payable by reason of Debtor's failure to perform.

4. **Events of Default and Acceleration.** Any part or all of the Indebtedness shall, at the option of Secured Party, become immediately due and payable without notice or demand upon the occurrence of any of the following events of default:

(a) If default occurs in the payment or performance of any of the Indebtedness, when and as it shall be due and payable. Debtor has five (5) business day cure period.

(b) If default occurs in the performance of any obligation of Debtor to Secured Party under this Agreement, the Credit Extension Agreement, or any promissory note or other instrument at any time evidencing any Indebtedness or under any other security agreement, loan agreement, mortgage, assignment, guaranty, or other agreement that now or hereafter secures or relates to any of the Indebtedness or any other indebtedness or obligation now or hereafter owing by Debtor to Secured Party or that secures or relates to any guaranty of any of the Indebtedness or any guaranty of any such other indebtedness or obligation (individually, "Security Document;" collectively, "Security Documents"). . Debtor has five (5) business day cure period.

(c) If any warranty, representation, or statement heretofore or hereafter made to Secured Party by Debtor or by any guarantor of all or part of the Indebtedness ("Guarantor") in this Agreement or in any Security Document, credit application, financial statement, or otherwise, shall have been false in any material respect when made or furnished.

(d) If Debtor or any of Debtor's partners (if Debtor is a partnership) or any Guarantor shall die, dissolve, become insolvent or make an assignment for the benefit of creditors.

(e) If any guaranty that now or hereafter secures payment or performance of all or any part of the Indebtedness shall be terminated or limited for any reason, without the written consent or agreement of Secured Party.

(f) If all or any material part of any Collateral consisting of inventory shall be destroyed or materially damaged by fire or other casualty, whether or not there is insurance coverage for the damage or destruction.

If a voluntary or involuntary case in bankruptcy, receivership, or insolvency shall at any time be commenced by or against Debtor or any Guarantor or any of Debtor's or any Guarantor's

partners (if Debtor or any Guarantor is a partnership) or if any attachment, garnishment, levy, execution or other legal process shall at any time be issued against or placed upon any Collateral, then the entire Indebtedness shall automatically become immediately due and payable, without notice or demand. All or part of the Indebtedness also may become, or may be declared to be, immediately due and payable under the terms of any note at any time evidencing any of the Indebtedness or of any loan agreement, Security Document or other agreement heretofore or hereafter entered into between Debtor and Secured Party. Debtor has ninety (90) day to cure default in regards to an involuntary bankruptcy.

  5. **Remedies.** Secured Party shall have all the rights and remedies of a secured party under applicable laws. Without limiting those rights and remedies, if all or any part of the Indebtedness is not paid at maturity plus five (5) business days for a cure period:

  (a) Without notice or demand to Debtor, Secured Party shall be entitled to notify Debtor's account debtors and obligors to make all payments directly to Secured Party, and Secured Party shall have the right to take all actions that Secured Party considers necessary or desirable to collect upon the Collateral consisting of accounts, contract rights, chattel paper, and general intangibles, including, without limitation, prosecuting actions against, or settling or compromising disputes and claims with, Debtor's account debtors and obligors and without notice or demand to Debtor, Secured Party may receive, open, dispose of, and notify the postal authorities to change the address of, mail directed to Debtor.

  (b) Upon demand by Secured Party, Debtor shall deliver the Collateral and proceeds of Collateral to Secured Party at such place as Secured Party shall designate and all books, records, agreements, leases, documents, and instruments evidencing or relating to the Collateral.

  (c) Secured Party may dispose of the Collateral in any commercially reasonable manner. Any notification required to be given by Secured Party to Debtor regarding any sale or other disposition of Collateral shall be considered reasonable if mailed at least five (5) days before the sale or other disposition.

  (d) The proceeds of any collection or disposition of the Collateral shall be applied first to Secured Party's attorneys' fees and expenses, as provided in Paragraph 6, and then to the Indebtedness, in such manner as Secured Party shall determine, and Debtor shall be liable for any deficiency remaining.

  (e) Secured Party shall have the right (but no obligation) to continue or complete the manufacturing or processing of, or other operations in connection with, any part of the Collateral consisting of inventory and, for such purpose, to enter and remain upon or in any land or buildings that are possessed by Debtor or that Debtor has the right to possess. Debtor will reimburse Secured Party on demand for any expense that Secured Party incurs in connection therewith and will pay to Secured Party interest thereon, from the date the expense was incurred by Secured Party, at the rate specified in Paragraph 3.

  All rights and remedies of Secured Party shall be cumulative and may be exercised from time to time.

6.  **Expenses.** Debtor shall reimburse Secured Party on demand for all attorneys' fees, legal expenses, and other expenses that Secured Party incurs in protecting and enforcing its rights under this Agreement. This includes fees and expenses incurred in trying to take possession of Collateral from Debtor, a trustee or receiver in bankruptcy or any other person. Secured Party may apply any proceeds of disposition or collection of Collateral to Secured Party's attorneys' fees, legal expenses, and other expenses.

7.  **Amendments and Waivers.** No provision of this Agreement may be modified or waived except by a written agreement signed by Secured Party. Secured Party will continue to have all of its rights under this Agreement even if it does not fully and promptly exercise them on all occasions.

8.  **Notices.** Any notice to Debtor or to Secured Party shall be deemed to be received two (2) business days after mailed by certified mail, with postage prepaid, to the respective address of Debtor or Secured Party appearing herein, or if and when delivered personally.

9.  **Other.** In this Agreement, "maturity" of any of the Indebtedness means the time when that Indebtedness has become due and payable, for whatever reason (including, for example, acceleration due to default or bankruptcy). If Debtor is more than one person, their obligations under this Agreement are joint and several, and the term "Debtor" refers to each and all of them. This Agreement shall be binding upon and inure to the benefit of Debtor and Secured Party and their respective heirs, personal representatives, successors, and assigns.

Executed this 31st day of January 31, 2006.

Secured Party:

**CATTLEMAN'S MEAT COMPANY,**
a Michigan corporation

By: _____

Its: _____CEO_____

Debtor:

**SCALA PACKING COMPANY, INC.,**
a/k/a Scala Packing Co.,
an Illinois corporation

By: _____

Its: _____president_____

Taxpayer I.D. No.: 36-2134671

Address:
707 N. Orleans St., Chicago, Illinois 60610

**CORPORATION SERVICE COMPANY**
www.incspot.com

CSC- Springfield
801 Adlai Stevenson Drive
Springfield, IL 62703
217-544-5900
217-492-2727 (Fax)

| | | | |
|---|---|---|---|
| Matter# | 4980.15368 | Order# | 865748-1 |
| Project Id : | | Order Date | 02/13/2006 |
| Additional Reference : | NOT PROVIDED | | |

Entity Name : SCALA PACKING COMPANY, INC.   (Debtor)/ CATTLEMAN'S MEAT COMPANY   (Secured Party)

Jurisdiction : IL-SECRETARY OF STATE

Request for : UCC Filing
File Type : ORIGINAL

Result : Filed

File Number : 10653029
Filing Date : 02/14/2006

Ordered by CASSANDRA FARLEY at SEYBURN, KAHN, GINN, BESS AND SERLIN, P.C.

  ık you for using CSC.  For real-time 24 hour access to the status of any order placed with CSC, access our website at w.incspot.com.

If you have any questions concerning this order or IncSpot,  please feel free to contact us.

Cindy Straub
cstraub@cscinfo.com

The responsibility for verification of the files and determination of the information therein lies with the filing officer; we accept no liability for errors or omissions.